# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
### CAMDEN VICINAGE

CASEY J. JANOWSKI,

    Plaintiff,

       v.

CITY OF NORTH WILDWOOD, et al.,

    Defendants.

Civil No. 16-4464 (RMB/JS)

**OPINION**

APPEARANCES:

Robert C. Scrivo, Esq.
McElroy, Deutsch, Mulvaney & Carpenter, LLP
1300 Mount Kemble Avenue
P.O. Box 2075
Morristown, New Jersey 07962
    *Attorney for Plaintiff Casey J. Janowski*

A. Michael Barker, Esq.
Barker, Gelfand & James
Linwood Greene
210 New Road, Suite 12
Linwood, New Jersey 08221
    *Attorney for Defendants City of North Wildwood*
    *and Chief Matthew Gallagher*

Thomas B. Reynolds, Esq.
John J. Bannan, Esq.
Reynolds & Horn, P.C.
750 Route 73 South, Suite 202A
Marlton, New Jersey 08053
    *Attorneys for Defendant Sergeant Keith McGee*

**BUMB**, UNITED STATES DISTRICT JUDGE:

    Life presents countless lessons. For many, they are

learned too late. Unfortunately, that is the case here. A

just-turned-21-year old with a misprinted driver's license had to know that he was courting disaster. An impatient police sergeant called to the bar--who could have just "counted to three"--had to know that this disaster would land him in court. For all sides, life has presented valuable lessons.

Defendant Sergeant McGee ("Sergeant McGee") and Defendants City of North Wildwood ("North Wildwood") and Chief Matthew Gallagher ("Chief Gallagher") move to dismiss the Complaint filed against them by Plaintiff Casey J. Janowski ("Plaintiff"). The Court has considered the parties' submissions and, for the reasons set forth herein, Sergeant McGee's Motion to Dismiss [Docket No. 19] is denied without prejudice and Chief Gallagher and North Wildwood's Motion to Dismiss [Docket No. 20] is granted. Nonetheless, Plaintiff will be permitted to amend his pleadings to cure the deficiencies identified herein.

## I.  FACTUAL AND PROCEDURAL BACKGROUND[1]

On the night of July 16, 2015, Plaintiff and his friends went to Keenan's Bar in Wildwood Crest, New Jersey. As Plaintiff reached the entrance to the bar after his friends had

---

[1] The facts recited herein are derived from Plaintiff's Complaint. The Court will and must accept Plaintiff's well-pled allegations as true in considering Defendants' Motions to Dismiss. See Bistrian v. Levi, 696 F.3d 352, 358 n. 1 (3d Cir. 2012). Additionally, as the Court writes primarily for the parties, it assumes the reader's familiarity with the facts and recites only those relevant to its decision herein.

already entered, he handed the bouncer his valid New York-issued driver's license. Compl. ¶¶ 17-20 [Docket No. 1]. The license correctly listed his birthday as November 24, 1993, indicating that Plaintiff was at least twenty-one years old, which he, in fact, was. Compl. ¶¶ 17, 20.

The bouncer, however, did not believe that Plaintiff was twenty-one years old or that the driver's license presented was valid. He asked Plaintiff to write his address on a sheet of paper, which Plaintiff accurately did. Compl. ¶¶ 21-22. Nonetheless, the bouncer stated that he did not believe the license belonged to Plaintiff and noted that the height listed on the license was 6'3", whereas Plaintiff was significantly shorter in height, approximately 5'6". Compl. ¶¶ 23-24. Plaintiff, apparently well-aware of the mistake on the license, explained that this was an error by New York State, but that the license was valid and he was twenty-one years old. Compl. ¶ 24. The bouncer informed Plaintiff that he still did not believe him and confiscated Plaintiff's driver's license. Thereafter, the bouncer told Plaintiff that if he wanted the license returned, Plaintiff could call the police. Plaintiff then did so. Compl. ¶¶ 25-26.

In response to Plaintiff's call, two police officers arrived at the scene. Compl. ¶ 26. The bouncer gave Plaintiff's license to the officers and Plaintiff explained that

he was actually twenty-one years old and that there was a typographical error as to his height on his driver's license. Compl. ¶ 28. Plaintiff also offered to show the officers other forms of identification, which he had in his wallet, to confirm his identity and age. Compl. ¶ 29. In response, the officers indicated that they were waiting for a scanner to determine the authenticity of the driver's license and asked Plaintiff to complete certain questions relating to the details on the license, which Plaintiff did without issue. Compl. ¶¶ 29-30.

As Plaintiff and the two officers were waiting for the scanner, Sergeant McGee arrived on the scene. Plaintiff explained to Sergeant McGee that his driver's license was valid and that he was twenty-one years old, as indicated on the license, but that there was simply an error as to his height on the license. Compl. ¶ 32. Immediately thereafter, without inspecting Plaintiff's alternate forms of identification or any further questioning, Sergeant McGee ordered the other officers to arrest Casey. Sergeant McGee was "emphatic" that the license did not belong to Plaintiff and noted that "his teeth looked different." Compl. ¶ 33. The officers then pulled Plaintiff's arms behind his back, pushed his face into the outside wall of the bar, tightly handcuffed Plaintiff, and drove Plaintiff to the North Wildwood Police Station. Compl. ¶¶ 34-36.

At the station, Plaintiff's possessions were removed from his pockets, including several forms of identification, including his University identification card, his health insurance card, and various credit and debit cards, all of which matched the name on his driver's license. Compl. ¶¶ 37-38. Sergeant McGee did not look at Plaintiff's alternate forms of identification and instead directed Plaintiff to smile. Sergeant McGee looked at Plaintiff smiling and Plaintiff's photograph on his driver's license and stated: "Your teeth look different." Compl. ¶¶ 39-40.

Plaintiff then asked Sergeant McGee if he could call his mother, who is an attorney in New York. Sergeant McGee denied Plaintiff's request and stated: "Stop you're making my head hurt." Compl. ¶ 41. Thereafter, Plaintiff overheard a phone call from his friend's mother, also an attorney, who had called the station to inquire about Plaintiff's arrest, to represent Plaintiff, and to confirm that Plaintiff was actually twenty-one years of age. Compl. ¶¶ 42-43. After this call concluded, an officer asked Plaintiff: "How many more girls are you going to have pretend to be your lawyer?" Compl. ¶ 44. Another officer asked if Plaintiff's parents had been called. After this, the officers returned Plaintiff's belongings, apologized, and released Plaintiff from custody. Compl. ¶¶ 49-50.

The following day, Plaintiff's mother spoke with Chief Gallagher at length over the phone. Compl. ¶ 51. Chief Gallagher informed her that he had reviewed the dashboard camera footage of Plaintiff's arrest and acknowledged that the arrest was improper. He further stated that he was "appalled" at what he had observed. Compl. ¶ 52. Chief Gallagher assured Plaintiff's mother that he would "get to the bottom of this" incident. He further noted that this was not the first incident concerning Sergeant McGee and that he would commence an Internal Affairs investigation into Plaintiff's arrest. Compl. ¶ 53.

An Internal Affairs investigation was commenced after the incident and Plaintiff testified at Sergeant McGee's disciplinary hearing on March 2, 2016. Compl. ¶ 57. The investigation found that Sergeant McGee violated the North Wildwood Police Department's policies and procedures by ordering Plaintiff's arrest. Compl. ¶ 58.

Based upon these events, on July 22, 2016, Plaintiff instituted this action by filing a Complaint against Sergeant McGee, Chief Gallagher, and North Wildwood [Docket No. 1], alleging that he was falsely arrested and imprisoned. The Complaint sets forth the following causes of action: (1) a claim for false arrest and false imprisonment against Chief Gallagher and Sergeant McGee in violation of the Fourth and Fourteenth Amendments, under 42 U.S.C. § 1983 ("Section 1983"); (2) a

supervisory liability claim against Chief Gallagher under Section 1983; (3) a municipal liability claim against North Wildwood under Section 1983; (4) a claim for false arrest and false imprisonment against Chief Gallagher and Sergeant McGee in violation of the New Jersey Constitution under the New Jersey Civil Rights Act, N.J.S.A. § 10:6-1, et seq. ("NJCRA"); (5) a supervisory liability claim against Chief Gallagher under the NJCRA; and (6) a municipal liability claim against North Wildwood under the NJCRA. All Defendants subsequently moved to dismiss Plaintiff's Complaint.

## II.    MOTION TO DISMISS STANDARD

To withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "[A]n unadorned, the-defendant-unlawfully-harmed-me accusation" does not suffice to survive a motion to dismiss. Id. "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a

formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)).

In reviewing a plaintiff's allegations, a district court should conduct a three-part analysis:

> First, the court must take note of the elements a plaintiff must plead to state a claim.  Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth.  Third, when there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.  [The] inquiry is normally broken down into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged.

Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011) (internal citations, quotations, and modifications omitted) (quoting Iqbal, 556 U.S. at 675, 679).

Rule 12(b)(6) requires the district court to "accept as true all well-pled factual allegations as well as all reasonable inferences that can be drawn from them, and construe those allegations in the light most favorable to the plaintiff." Bistrian, 696 F.3d at 358 n. 1.  Only the allegations in the complaint and "matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case" are taken into consideration.  Oshiver v. Levin,

Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n. 2 (3d Cir. 1994) (citing Chester Cty. Intermediate Unit v. Pennsylvania Blue Shield, 896 F.2d 808, 812 (3d Cir. 1990)).  A court may also "consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document."  Pension Ben. Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).

Finally, "[i]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." Com. of Pa. ex rel. Zimmerman v. PepsiCo, Inc., 836 F.2d 173, 181 (3d Cir. 1988) (internal citations and quotations omitted). As such, the permissible role of a plaintiff's opposition brief is merely to explain the "legal theories . . . that [ ] find support in the allegations set forth in the complaint."  See id.

## III.  ANALYSIS

In the Complaint, Plaintiff asserts six causes of action against Defendants.  In the first and fourth counts, Plaintiff sets forth false arrest and false imprisonment claims against Sergeant McGee and Chief Gallagher under Section 1983 and the NJCRA respectively.  The second and fifth counts set forth supervisory liability claims against Chief Gallagher in his official capacity as Chief of the North Wildwood Police Department under Section 1983 and the NJCRA respectively.

Finally, the third and sixth counts set forth municipal liability claims against North Wildwood under Section 1983 and the NJCRA respectively. "This district has repeatedly interpreted NJCRA analogously to § 1983." <u>Pettit v. New Jersey</u>, 2011 WL 1325614, at *3 (D.N.J. Mar. 30, 2011) (collecting cases); <u>see also</u> <u>Borden v. Sch. Dist. of Twp. of E. Brunswick</u>, 523 F.3d 153, 164 n. 5 (3d Cir. 2008). Accordingly, the Court will consider Plaintiff's claims under the NJCRA together with his claims under Section 1983.

Sergeant McGee moves to dismiss the false arrest and false imprisonment claims asserted against him, arguing that he is entitled to qualified immunity. Additionally, North Wildwood and Chief Gallagher have moved to dismiss Plaintiff's claims for failure to state a claim.

### A. False Arrest and False Imprisonment Claims (Counts 1 and 4)

#### i. Sergeant Keith McGee

Sergeant McGee argues that he is entitled to qualified immunity on Plaintiff's false arrest and false imprisonment claims. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" <u>Pearson v. Callahan</u>, 555 U.S. 223, 231 (2009) (quoting

Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)); accord Plumhoff
v. Rickard, 134 S. Ct. 2012, 2023 (2014) ("An official sued
under § 1983 is entitled to qualified immunity unless it is
shown that the official violated a statutory or constitutional
right that was 'clearly established' at the time of the
challenged conduct.").  Qualified immunity protects from suit
"all but the plainly incompetent or those who knowingly violate
the law."  Ashcroft v. al-Kidd, 563 U.S. 731, 743 (2011)
(quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)).

Qualified immunity is immunity from suit, rather than
merely a defense to liability, and, as such, should be resolved
as early as possible.  Pearson, 555 U.S. at 231-32.  "[T]he
qualified immunity analysis involves a fact-intensive inquiry
that is generally ill-suited for resolution at the pleadings
stage."  Batiz v. Brown, 2013 WL 1137531, at *7 (D.N.J. Mar. 14,
2013); accord Coles v. Carlini, 2012 WL 1079446, at *9 (D.N.J.
Mar. 29, 2012) ("the qualified immunity analysis is typically
inappropriate for motions to dismiss for the very issue present
in this motion--it is a fact sensitive inquiry.").  Indeed, the
Third Circuit has "caution[ed] . . . that it is generally unwise
to venture into a qualified immunity analysis at the pleading
stage as it is necessary to develop the factual record in the
vast majority of cases."  Newland v. Reehorst, 328 F. App'x 788,
791 n. 3 (3d Cir. 2009).  As a result, "qualified immunity will

be upheld on a 12(b)(6) motion only when the immunity is established on the face of the complaint." Thomas v. Independence Twp., 463 F.3d 285, 291 (3d Cir. 2006) (quoting Leveto v. Lapina, 258 F.3d 156, 161 (3d Cir. 2001)) (emphasis added).

In determining whether an officer is entitled to qualified immunity from suit, a court must answer two questions: "(1) whether the officer violated a constitutional right," and "(2) whether the right was clearly established, such that it would have been clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Lamont v. New Jersey, 637 F.3d 177, 182 (3d Cir. 2011) (internal quotations and modifications omitted) (quoting Saucier v. Katz, 533 U.S. 194, 201-02 (2001)). The questions may be answered in either order. Pearson, 555 U.S. at 242. Additionally, the officer seeking to invoke qualified immunity bears the burden of proving its applicability. Reedy v. Evanson, 615 F.3d 197, 223 (3d Cir. 2010).

For purposes of his motion to dismiss only, Sergeant McGee does not contest that a constitutional violation has been alleged. Rather, Sergeant McGee focuses on the second question, arguing that, although "Sergeant McGee does not concede that he was mistaken in his judgment that probable cause existed for Plaintiff's arrest, [he] would nonetheless be entitled to

qualified immunity from this lawsuit even if he were mistaken as alleged in the Complaint." Def. McGee Br. at 8 [Docket No. 19-4] (emphasis added). Accordingly, consistent with Sergeant McGee's arguments, the Court assumes, for purposes of resolving the instant motion only, that the first question is answered in the affirmative. The Court, therefore, turns to whether, based on the pleadings, it would have been clear to a reasonable officer that his conduct was unlawful in the situation he confronted, that is, that he did not have probable cause to arrest Plaintiff.

In determining whether a right is clearly established, it must be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. Saucier, 533 U.S. at 202 (citing Wilson v. Layne, 526 U.S. 603, 615 (1999)). Stated differently, "a defendant cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." Plumhoff, 134 S. Ct. at 2023. The Supreme Court has cautioned courts "'not to define clearly established law at a high level of generality,' since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." Id. (quoting al-Kidd, 563 U.S. at 742). Instead, when determining whether an officer's

actions violated a "clearly established right," the "inquiry 'must be undertaken in light of the specific context of the case, not as a broad general proposition.'" Brosseau v. Haugen, 543 U.S. 194, 198 (2004) (quoting Saucier, 533 U.S. at 201).

Arrest without probable cause is certainly a clearly established constitutional violation in the abstract. See Orsatti v. New Jersey State Police, 71 F.3d 480, 482 (3d Cir. 1995) (citing Papachristou v. City of Jacksonville, 405 U.S. 156, 169 (1972)) ("The general principles of law that govern this case are well settled. Broadly stated, the Fourth Amendment prohibits a police officer from arresting a citizen except upon probable cause."). That alone, however, does not end the inquiry. Rather, "the right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Saucier, 533 U.S. at 202 (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)).

Thus, the question this Court must address is whether a reasonable officer in Sergeant McGee's shoes at the time of Plaintiff's arrest would have understood that he did not have probable cause to arrest Plaintiff. See Plumhoff, 134 S. Ct. at 2023. Here, the Court must consider whether, in light of the

circumstances known to Sergeant McGee at the time he arrested Plaintiff, as pled in the Complaint, it was reasonable for Sergeant McGee to believe that he had probable cause to do so.

Plaintiff asserts false arrest and false imprisonment claims against Sergeant McGee.  At the heart of such claims is the allegation that Plaintiff's arrest was made without probable cause.  See, e.g., Wright v. City of Philadelphia, 409 F.3d 595, 601 (3d Cir. 2005) ("An arrest by a law enforcement officer without a warrant 'is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed.'") (quoting Devenpeck v. Alford, 543 U.S. 146, 152 (2004)); Pulice v. Enciso, 39 F. App'x 692, 696 (3d Cir. 2002) ("Under § 1983, false arrest, false imprisonment, and malicious prosecution claims require a showing that the arrest, physical restraint, or prosecution was initiated without probable cause.").  "Probable cause exists where the facts and circumstances within the arresting officer's knowledge are sufficient to warrant a reasonable person to believe an offense had been committed."  United States v. McGlory, 968 F.2d 309, 342 (3d Cir. 1992).[2]

---

[2] As this Court previously noted, "[t]his district has repeatedly interpreted the NJCRA analogously to § 1983." Pettit, 2011 WL 1325614, at *3.  Likewise, the standard for probable cause is identical under federal and New Jersey law. Maples v. Atlantic City, 2008 WL 2446825, at *6 (D.N.J. June 16, 2008); see also New Jersey v. Basil, 202 N.J. 570, 585–86 (2010)

In determining whether probable cause existed at the time of the arrest, the "arresting officer's state of mind (except for the facts that he knows)" and the charges "actually invoked by the arresting officer" are irrelevant. Devenpeck, 543 U.S. at 153; Jaegly v. Couch, 439 F.3d 149, 154 (2d Cir. 2006). Courts must instead objectively assess whether, at the time of the arrest and based upon the facts known to the officer, probable cause existed "as to any offense that could be charged under the circumstances." Wright, 409 F.3d at 602 (quoting Barna v. City of Perth Amboy, 42 F.3d 809, 819 (3d Cir. 1994)). Courts must determine "whether, at the moment the arrest was made, the officers had probable cause to make it--whether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense." Beck v. State of Ohio, 379 U.S. 89, 91 (1964); accord Devenpeck, 543 U.S. at 152 ("Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest.").

_____

(reciting standard for probable cause to arrest under New Jersey law and citing to federal law as basis for that standard). For these reasons, the Plaintiff's federal and state law false arrest and false imprisonment claims are considered together.

Crucially, "[t]he test for an arrest without probable cause is an objective one, based on 'the facts available to the officers at the moment of arrest.'" Barna, 42 F.3d at 819 (quoting Beck, 379 U.S. at 96). Courts must consider the totality of the circumstances known to the officer at the time of the arrest. Andrews v. Scuilli, 853 F.3d 690, 698, 704 (3d Cir. 2017). As discussed supra, the totality of the circumstances known to the officer must be established on the face of the complaint in order for this Court to carry out its qualified immunity analysis.

Probable cause may exist "even in the absence of the actual observance of criminal conduct when a prudent observant would reasonably infer that a defendant acted illegally." United States v. Burton, 288 F.3d 91, 98 (3d Cir. 2002) (citing Illinois v. Gates, 462 U.S. 213, 243 n. 13 (1983) ("probable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity.")). Additionally, "[t]he validity of the arrest does not depend on whether the suspect actually committed a crime; the mere fact that the suspect is later acquitted of the offense for which he is arrested is irrelevant to the validity of the arrest." Michigan v. DeFillippo, 443 U.S. 31, 36 (1979). "[T]he kinds and degree of proof and the procedural requirements necessary for a conviction are not prerequisites to a valid arrest." Id.

Sergeant McGee argues that he is entitled to qualified immunity, given all the facts as pled, because it was not clearly established that he did not have probable cause to arrest Plaintiff under the circumstances for presenting a false identification. In his moving brief, Sergeant McGee refers the Court to N.J.S.A. § 33:1-81(c), which provides:

> It shall be unlawful for: . . .
>
> (c) Any person to misrepresent or misstate his age, or the age of any other person for the purpose of inducing any licensee or any employee of any licensee, to sell, serve or deliver any alcoholic beverage to a person under the legal age for purchasing alcoholic beverages[.]

N.J.S.A. § 33:1-81(c). An individual must be at least 21 years of age to legally purchase and consume alcohol in the State of New Jersey. N.J.S.A. § 9:17B-1(b).

According to Sergeant McGee, even if he was mistaken in his belief that he had probable cause to arrest and detain Plaintiff, he is nonetheless entitled to qualified immunity because such mistake is reasonable under the circumstances. In support, Sergeant McGee contends that he reasonably believed he had probable cause to arrest Plaintiff for possessing a false identification because of the blatant discrepancy between Plaintiff's actual height and the height listed on his driver's license and because Sergeant McGee thought Plaintiff's "teeth looked different than in the driver's license photo." Def. McGee Br. at 9. Additionally, he argues that he reasonably

believed he had probable cause to arrest Plaintiff because the
bouncer at Keenan's Bar believed the driver's license was
invalid and because Plaintiff was only seven months past his
twenty-first birthday and, therefore, "might still appear to be
underage." Id. Finally, despite the fact that a scanner was on
its way and that Plaintiff had offered to present several other
forms of identification to corroborate his age and identity,
Sergeant McGee claims that once he "believed probable cause
existed for Plaintiff's arrest as a result of the facts and
circumstances as he understood them to be at the time of the
arrest, he was not required to undertake a more exhaustive
investigation prior to making the arrest." Id. at 9-10.[3]

---

[3] Sergeant McGee relies, in part, on the Third Circuit's
decision in Merkle v. Upper Dublin School District, in which the
Third Circuit stated that the defendant officer "was not
required to undertake an exhaustive investigation in order to
validate the probable cause that, in his mind, already existed."
211 F.3d 782, 790 n. 8 (3d Cir. 2000). As alleged in the
Complaint, however, not only did Sergeant McGee not conduct an
exhaustive investigation prior to arresting Plaintiff, but he
failed to conduct any investigation. In any event, regardless
of whether Sergeant McGee was required to investigate any
further than looking at Plaintiff's driver's license and teeth
before arresting Plaintiff, it appears that it would have been
the prudent thing to do. In this Court's view, this entire
debacle could have been prevented with a dose of common sense
and courtesy. Unfortunately, these traits were not displayed.
Plaintiff eagerly offered alternative forms of identification,
yet he was ignored. The first officers on the scene called a
scanner to confirm the validity of Plaintiff's driver's license,
but this plan was abandoned in favor of a seemingly rash
decision that Plaintiff was lying, leading to his arrest. Had
Sergeant McGee politely requested that Plaintiff voluntarily
accompany him to the police station to confirm his age and

At this stage, however, on the face of the Complaint alone, it is impossible for this Court to consider the totality of the circumstances known to Sergeant McGee at the time of the arrest. Without this, the Court cannot make a determination as to whether it was clearly established that an officer, presented with the situation confronted by Sergeant McGee, did not have probable cause to arrest Plaintiff. Without the full set of facts known to Sergeant McGee at the time of Plaintiff's arrest, the Court cannot assess whether it was reasonable for Sergeant McGee to believe he had probable cause to arrest Plaintiff.

For example, based on the Complaint alone, it is unknown whether Sergeant McGee had an opportunity to compare Plaintiff's teeth, either in person or in the driver's license photograph, prior to Plaintiff's arrest. If Plaintiff appeared in person exactly as he did in the driver's license photograph, this would suggest that Sergeant McGee did not act reasonably, whereas if Plaintiff appeared different from his photograph, that would be one fact to support the propriety of the arrest. Neither a copy of the driver's license nor a photograph of Plaintiff is included in the pleadings. Thus, it cannot be said that, on the face of the Complaint, qualified immunity attaches because Sergeant McGee reasonably believed he had probable cause to

--------------------

identity, perhaps all parties would have been satisfied and this litigation could have been avoided.

arrest.  Indeed, according to the Complaint, it was not until
after Plaintiff was arrested and at the police station that
Sergeant McGee directed Plaintiff to smile and observed his
teeth.  Compl. ¶¶ 39-40.

More importantly, at this early juncture, it is unclear
what was known by Sergeant McGee at the time of Plaintiff's
arrest.  On the face of the Complaint, the Court cannot
determine what Sergeant McGee knew upon arrival at the scene.
For example, it is unknown whether Sergeant McGee was aware that
it was Plaintiff, not the bouncer, who called the police to
retrieve his driver's license or that Plaintiff correctly
answered all questions asked by the first officers on the scene
regarding his identity and driver's license, facts that enter
into the "totality of the circumstances" inquiry.  That
Plaintiff would make the call himself would seem to suggest that
he committed no crime, as individuals guilty of criminal conduct
do not tend to spotlight their crime to the police.
Additionally, the Complaint does not state whether Sergeant
McGee knew that the first officers on the scene were waiting for
a scanner to determine the authenticity of Plaintiff's driver's
license.  It is also unclear what the first arriving officers
relayed to Sergeant McGee, if anything, either before or upon
his arrival.  Such information would likely greatly impact this
Court's analysis.  Only development of the factual record will

elucidate the full set of circumstances that Sergeant McGee
confronted at the time of Plaintiff's arrest, so that qualified
immunity may be determined.

Qualified immunity is an affirmative defense, "not a part
of the plaintiff's cause of action which he must denigrate."
Thomas, 463 F.3d at 292 (citing Gomez v. Toledo, 446 U.S. 635,
639-40 (1980)). As a result, "there is 'no basis for imposing
on the plaintiff an obligation to anticipate such a defense[.]"
Id. (quoting Gomez, 446 U.S. at 640). Thus, as is clear,
qualified immunity should only be granted on a motion to dismiss
when it is "established on the face of the complaint." Id.
at 291.

Without further factual development, the Court cannot
evaluate the full set of circumstances with which Sergeant McGee
was confronted at the time he arrested Plaintiff. This
information is critical to this Court's determination of whether
Sergeant McGee is entitled to qualified immunity. Accordingly,
as the Court does not find that qualified immunity is apparent
on the face of the Complaint, Sergeant McGee's motion to dismiss
is denied without prejudice. If appropriate, Sergeant McGee may
raise this defense again at a later stage of the litigation.

It bears noting, however, that even with a proper factual
record, upon completion of discovery, jury questions are likely
to remain. For example, the Court does not envision that the

parties will agree that Plaintiff's teeth "looked different" in his driver's license photograph than in person.  And, while the height discrepancy is undisputed, it is only one factor that goes into the probable cause and qualified immunity analyses. Only when there are no material disputed facts may the Court resolve the existence of probable cause; the existence of probable cause is generally a question for the jury.  Merkle, 211 F.3d at 788-89.  The test will be "whether any reasonable jury could conclude that those facts, considered in their totality in the light most favorable to the nonmoving party, did not demonstrate a 'fair probability' that a crime occurred." Andrews, 853 F.3d at 698 (quoting Dempsey v. Bucknell Univ., 834 F.3d 457, 468 (3d Cir. 2016)).  The Supreme Court "has eschewed 'any rigid demand that specific 'tests' be satisfied' and has instead prescribed a 'totality-of-the-circumstances approach' to the probable cause determination."  Dempsey, 834 F.3d at 467-68 (quoting Gates, 462 U.S. at 230-31).

Additionally, in light of the "tightly intertwined issues of fact and law" involved in the qualified immunity analysis, the Court may use a jury in an advisory capacity to assist in its determination, though the "responsibility for answering the ultimate question remains with the court."  Curley v. Klem, 499 F.3d 199, 211 n. 12 (3d Cir. 2007).  Thus, at a minimum, special interrogatories to the jury may be appropriate to assist

the Court in its qualified immunity analysis by resolving the
"credibility-centered factual determination" of what
circumstances Sergeant McGee confronted at the time of
Plaintiff's arrest.  See Brandt v. Monte, 626 F. Supp. 2d 469,
484 (D.N.J. 2009).

### ii. Chief Gallagher

The Court next turns to Plaintiff's false arrest and
imprisonment claims against Chief Gallagher in his individual
capacity.  Chief Gallagher argues that these claims must be
dismissed because the Complaint fails to set forth sufficient
facts regarding Chief Gallagher's personal involvement in
Plaintiff's arrest and detention.  For the following reasons,
the Court agrees.

There are no allegations in the Complaint that even suggest
that Chief Gallagher was present during or directly involved in
Plaintiff's arrest or detention.  Instead, Plaintiff argues that
"Chief Gallagher admitted to [Plaintiff's] mother that
Sgt. McGee had engaged in similar conduct in the past," yet
"[d]espite his knowledge of Sgt. McGee's prior conduct, Chief
Gallagher failed to take precautions to prevent further civil
rights violations by Sgt. McGee."  Pl. Opp. Br. at 19 [Docket
No. 23].  Accordingly, Plaintiff contends, "[b]y failing to take
the necessary precautions, Chief Gallagher's deliberate
indifference directly caused the violations of [Plaintiff's]

constitutional rights." Id. Plaintiff appears to argue that Chief Gallagher is liable, in his individual capacity, for Plaintiff's allegedly unlawful arrest and imprisonment on a supervisory theory of liability.[4]

"'[T]here are two theories of supervisory liability,' one under which supervisors can be liable if they 'established and maintained a policy, practice or custom which directly caused [the] constitutional harm,' and another under which they can be liable if they 'participated in violating plaintiff's rights, directed others to violate them, or, as the person[s] in charge, had knowledge of and acquiesced in [their] subordinates' violations.'" Santiago v. Warminster Twp., 629 F.3d 121, 129 n. 5 (3d Cir. 2010) (quoting A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr., 372 F.3d 572, 586 (3d Cir. 2004)).

Unquestionably, there are no allegations in the Complaint that Chief Gallagher participated in violating Plaintiff's rights or directed others to do so. Furthermore, the Complaint is entirely devoid of any allegations that Chief Gallagher had knowledge of Sergeant McGee's actions on July 16, 2015, let alone that he acquiesced in those actions.

---

[4] Plaintiff also asserts supervisory liability claims against Chief Gallagher in his official capacity in Counts 2 and 5 of the Complaint, which are addressed infra Section III.C.

The only well-pled allegations against Chief Gallagher are that he spoke with Plaintiff's mother the day after Plaintiff's arrest and indicated that "this was not the first incident concerning Sgt. McGee." Compl. ¶ 53. The remaining allegations regarding Chief Gallagher's purported involvement in Plaintiff's arrest and detention are mere legal conclusions. See Compl. ¶¶ 54-56, 68-71. As will be addressed in further detail below, there are insufficient allegations in the Complaint to plead the existence of any policy, practice, or custom created by Chief Gallagher that Sergeant McGee followed, resulting in an alleged violation of Plaintiff's constitutional rights. For these reasons, Plaintiff's false arrest and false imprisonment claims under Section 1983 and the NJCRA against Chief Gallagher in his individual capacity must be dismissed without prejudice. Accordingly, the Court grants Chief Gallagher's motion to dismiss Counts 1 and 4 of the Complaint against him in his individual capacity.

### B. Municipal Liability Claims against North Wildwood (Counts 3 and 6)

North Wildwood contends that Counts 3 and 6 of the Complaint, which set forth municipal liability claims against it under Section 1983 and the NJCRA respectively, must be dismissed for failure to state a claim for municipal liability pursuant to

<u>Monell v. Department of Social Services of the City of New York</u>, 436 U.S. 658 (1978).

"A municipality cannot be held liable for the unconstitutional acts of its employees on a theory of respondeat superior." <u>Thomas v. Cumberland County</u>, 749 F.3d 217, 222 (3d Cir. 2014) (citing <u>Monell</u>, 436 U.S. at 691). Rather, "[a] plaintiff seeking to hold a municipality liable under section 1983 must demonstrate that the violation of rights was caused by the municipality's policy or custom." <u>Id.</u> (citing <u>Monell</u>, 436 U.S. at 690-91). For municipal liability under Section 1983 to attach, a plaintiff must demonstrate that "the policy or custom itself violates the Constitution" or that "the policy or custom, while not unconstitutional itself, is the 'moving force' behind the constitutional tort of one of its employees." <u>Id.</u> (quoting <u>Colburn v. Upper Darby Twp.</u>, 946 F.2d 1017, 1027 (3d Cir. 1991)).[5]

---

[5] Plaintiff's municipal liability claim under the NJCRA is interpreted consistently with Section 1983 in this respect. <u>See, e.g.</u>, <u>Perez v. New Jersey</u>, 2015 WL 4394229, at *8 (D.N.J. July 15, 2015) (citing <u>Ingram v. Twp. of Deptford</u>, 911 F. Supp. 2d 289, 298 (D.N.J. 2012) ("[B]ecause respondeat superior liability is not permitted under § 1983, and because New Jersey courts interpret the NJCRA as analogous to § 1983, the Court holds that respondeat superior liability is not permitted for claims under the New Jersey Constitution and the NJCRA."); <u>Didiano v. Balicki</u>, 2011 WL 1466131, at *10 (D.N.J. Apr. 18, 2011)); <u>accord</u> <u>Estate of Dasaro v. Cty. of Monmouth</u>, 2015 WL 5771606, at *5 (D.N.J. Sept. 30, 2015) (same).

Moreover, "[w]here the policy 'concerns a failure to train or supervise municipal employees, liability under section 1983 requires a showing that the failure amounts to 'deliberate indifference' to the rights of persons with whom those employees will come into contact." Id. (quoting Carter v. City of Philadelphia, 181 F.3d 339, 357 (3d Cir. 1999)). "'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." Connick v. Thompson, 563 U.S. 51, 61 (2011) (quoting Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown, 520 U.S. 397, 410 (1997)).

Additionally, "a municipality may be liable under § 1983 for a single decision by its properly constituted legislative body--whether or not that body had taken similar action in the past or intended to do so in the future--because even a single decision by such a body unquestionably constitutes an act of official government policy." Pembaur v. City of Cincinnati, 475 U.S. 469, 480 (1986); accord Langford v. City of Atl. City, 235 F.3d 845, 848 (3d Cir. 2000). The Third Circuit has reiterated that "[t]he Supreme Court's decision in Pembaur makes clear that an official with policymaking authority can create official policy, even by rendering a single decision." McGreevy v. Stroup, 413 F.3d 359, 367-68 (3d Cir. 2005).

Municipal liability may only be imposed based upon a single decision "where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered." Pembaur, 475 U.S. at 481. "'[A]n official has final policy-making authority, and can thus bind the municipality by his conduct' if 'the official is responsible for making policy in the particular area of municipal business in question' and 'the official's authority to make policy in that area is final and unreviewable.'" Ecotone Farm LLC v. Ward, 639 F. App'x 118, 128 (3d Cir. 2016) (quoting Hill v. Borough of Kutztown, 455 F.3d 225, 245 (3d Cir. 2006)) (emphasis in original).

Plaintiff contends that his allegations "demonstrate that Chief Gallagher is a municipal policymaker who exhibited deliberate indifference and/or acquiescence to Sgt. McGee's improper conduct. Chief Gallagher's knowledge of Sgt. McGee's prior conduct and deliberate indifference to that conduct caused the violations of [Plaintiff's] constitutional rights." Pl. Opp. Br. at 21.

At this juncture, the Court makes no findings as to whether Chief Gallagher is a policymaker in this context. Even assuming that Chief Gallagher may be considered a policymaker here, such that even a single act by him could constitute a municipal policy or custom, the Court finds that the Complaint falls far short of adequately pleading a municipal liability claim. The

Complaint alleges no actions on the part of Chief Gallagher that are violative of Plaintiff's rights. Moreover, there are no allegations that even suggest that Chief Gallagher displayed deliberate indifference to any alleged violations by others, including Sergeant McGee.

Plaintiff's municipal liability claims, just as his supervisory liability claims, are premised upon a single factual allegation in the Complaint: Chief Gallagher "informed Mrs. Janowski that this was not the first incident concerning Sgt. McGee." Compl. ¶ 53. From this alone, Plaintiff concludes that:

> 54. Chief Gallagher thus directed, participated in, had actual knowledge of, and acquiesced in his subordinates' violations of Casey's constitutional rights as detailed in this Complaint.
>
> 55. Chief Gallagher's actions in this matter, including his failure to prevent his subordinates' violations of Casey's constitutional rights as set forth in this Complaint, amounts to a callous, reckless, knowing, and deliberate indifference to those rights.
>
> 56. Chief Gallagher's direction of, participation in, knowledge of, and acquiescence in his subordinates' violations of Casey's rights was a breach of his sworn duty to the City of North Wildwood, the North Wildwood Police Department, and the people of North Wildwood.

Compl. ¶¶ 54-56.

The Complaint also baldly alleges that North Wildwood had "in effect express, official policies, and/or practices and customs, that were the direct and proximate cause of the

violations of Casey's constitutional and civil rights as set forth in this Complaint." Compl. ¶ 77.

Next, Plaintiff concludes, without any factual elaboration, as follows:

> 78.  In particular, Chief Gallagher, John Does 1-10, the City, and the police Department at all times relevant to this Complaint have and had actual and/or constructive knowledge of repeated and persistent abuses of civil and constitutional rights by Sgt. McGee, . . . with the sole purpose to harass, intimidate, and humiliate, as set forth in this Complaint.
>
> 79.  Despite that actual and/or constructive knowledge, Chief Gallagher, John Does 1-10, the City, and the Police Department tolerated, condoned, displayed deliberate indifference to and tacitly authorized the behavior and custom of Sgt. McGee to violate the constitutional rights of members of the public.  As a direct and proximate result of their misfeasance and malfeasance in light of the foregoing, the custom and conduct became the de facto official policy of the City and the Police Department.
>
> 80.  Moreover, Chief Gallagher, John Does 1-10, the City, and the Police Department had a duty to train and supervise the conduct of Police Department personnel and, among other things, to prevent such personnel from violating the constitutional rights of Casey and other members of the public.  Chief Gallagher, Johns Does 1-10, the City, and the Police Department knowingly, intentionally, recklessly, and/or negligently breached their duty to train and supervise the Police Department, all of whom were under their control, resulting in the deprivation of Casey's constitutional rights as set forth in this Complaint.
>
> 81.  The City's training policy was inadequate in that it failed to properly train members of the Police Department with respect to constitutionally-required procedures for lawfully procuring arrests, imprisoning suspects, and otherwise performing lawful law enforcement functions.  That training policy was so deficient as to reflect deliberate indifference on the part of the City, the Police Department, Chief

Gallagher, and John Does 1-10 to the constitutional and
civil rights of persons, including Casey, with whom the
members of the Police Department came into contact[.]

82.   The City and the Police Department maintained and
implemented the aforementioned policies, practices, and
customs through Chief Gallagher and John Does 1-10 and
with deliberate indifference to the rights of Casey and
others.   Those policies and customs were the direct and
proximate   cause   of   the   violations   of   Casey's
constitutional and civil rights as set forth in this
Complaint.

Compl. ¶¶ 78-82.  These textbook conclusory allegations are not

entitled to the assumption of truth.  <u>Malleus</u>, 641 F.3d at 563.

Plaintiff's allegations of any municipal policy, practice,

or custom are, at best, completely conclusory and, at worst,

totally absent from the Complaint.  Based solely upon Chief

Gallagher's alleged comment that "this was not the first

incident concerning Sgt. McGee," Plaintiff improperly

extrapolates that Chief Gallagher was aware that Sergeant McGee

had previously committed civil rights and constitutional

violations and yet took no steps to address the purported

violations.  As Defendants correctly note, that is simply an

overstatement of the pleadings.  Plaintiff cannot amend or

supplement his pleadings through his opposition brief.

<u>Zimmerman</u>, 836 F.2d at 181.  As currently pled, the Complaint

alleges nothing more than that Chief Gallagher stated that there

have been other "incidents concerning Sergeant McGee."  There

are no allegations whatsoever in the Complaint as to the nature

of these incidents or Chief Gallagher's responses to those incidents, from which one could infer an unlawful policy, custom, or practice, or deliberate indifference on the part of Chief Gallagher.

Indeed, the only well-pled allegations regarding Chief Gallagher's conduct are that he spoke with Plaintiff's mother _after_ Plaintiff was released from custody, that he promised to investigate the matter, and that he did, in fact, investigate. The allegations not only suggest that Chief Gallagher did not act unlawfully or with deliberate indifference, but that he acted properly. Plaintiff has not alleged even a single decision by Chief Gallagher as a policymaker, let alone the existence of a preexisting custom, policy, or practice, that could form the basis of a municipal liability claim. For the foregoing reasons, the Court grants North Wildwood and Chief Gallagher's motion to dismiss Counts 3 and 6 of the Complaint. Plaintiff's municipal liability claims are dismissed without prejudice.

### C. Supervisory Liability Claims against Chief Gallagher (Counts 2 and 5)

Finally, the Court addresses Plaintiff's supervisory liability claims against Chief Gallagher in his official capacity, set forth in Counts 2 and 5 of the Complaint. As the Court noted _supra_, "[t]here are two theories of supervisory

liability." Santiago, 629 F.3d at 129 n. 5.  Under the first,

"supervisors can be liable if they 'established and maintained a

policy, practice or custom which directly caused [the]

constitutional harm." Id. (quoting A.M. ex rel. J.M.K, 372 F.3d

at 586).  For the reasons set forth above in addressing

Plaintiff's municipal liability claims, the Court finds that the

Complaint does not set forth sufficient facts to establish that

Chief Gallagher established or maintained a policy, practice, or

custom that directly caused any alleged constitutional harm to

Plaintiff.  Plaintiff's allegations in this respect are wholly

conclusory.

The second theory of supervisory liability provides that

supervisors "can be liable if they 'participated in violating

plaintiff's rights, directed others to violate them, or, as the

person[s] in charge, had knowledge of and acquiesced in [their]

subordinates' violations.'" Id. (quoting A.M. ex rel. J.M.K.,

372 F.3d at 586).[6]  As the Court has already found, there are

---

[6] The Third Circuit has acknowledged that the Supreme
Court's decision in Iqbal may have altered the scope of
supervisory liability in the Section 1983 context.  "To date,
[the Third Circuit] ha[s] refrained from answering the question
of whether Iqbal eliminated--or at least narrowed the scope of--
supervisory liability." Jennings-Fowler v. City of Scranton,
--- F. App'x ----, 2017 WL 715068, at *4 n. 24 (3d Cir. Feb. 23,
2017) (quoting Argueta v. U.S. Immigration & Customs Enf't, 643
F.3d 60, 70 (3d Cir. 2011)).  Any resulting narrowing of
supervisory liability after Iqbal does not impact this Court's
decision here as it is plainly clear that the facts as currently

simply no allegations that Chief Gallagher was in any way
involved in Plaintiff's arrest and detention, let alone that he
participated in any alleged violations of Plaintiff's rights or
directed others to violate Plaintiff's rights.  Moreover, there
are no well-pled allegations that he had knowledge of and
acquiesced in any alleged unlawful conduct on the part of
Sergeant McGee.  Indeed, the only allegations regarding Chief
Gallagher address his conduct the day after Plaintiff's arrest,
after he had been released from custody.  Chief Gallagher
allegedly expressed his dismay at the circumstances to
Plaintiff's mother and vowed to investigate the situation, which
he did.  Based upon the pleadings, the Court sees no basis to
impose liability upon Chief Gallagher and, therefore, dismisses
the supervisory liability claims set forth in Counts 2 and 5 of
the Complaint against Chief Gallagher in his official capacity.

In any event, even if Plaintiff could plead sufficient
facts to establish supervisory liability against Chief Gallagher
in his official capacity, the Court nonetheless also dismisses
the supervisory liability claims on separate grounds.  Chief
Gallagher and North Wildwood argue that Plaintiff's supervisory
liability claims against Chief Gallagher in his official
capacity set forth in Counts 2 and 5 of the Complaint should be

---

pled cannot sustain a supervisory liability claim against Chief
Gallagher under any standard.

dismissed as duplicative of municipal liability claims against North Wildwood, set forth in Counts 3 and 6 of the Complaint. The Court agrees.  In fact, even Plaintiff does not contest that the Court may dismiss these claims as duplicative of the municipal liability claims against North Wildwood.  Rather, Plaintiff simply argues that the Court is "not <u>required</u> to do so."  Pl. Opp. Br. at 23 (emphasis added).

"[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity.  It is <u>not</u> a suit against the official personally, for the real party in interest is the entity."  <u>Kentucky v. Graham</u>, 473 U.S. 159, 166 (1985).  Accordingly, where claims against an officer in his official capacity are duplicative of claims against the municipality, those claims are properly dismissed as redundant. <u>See, e.g.</u>, <u>Baez v. Lancaster Cty.</u>, 487 F. App'x 30, 32 (3d Cir. 2012) ("The claim against Warden Guarini in his official capacity is duplicative of the suit against the County.  As a result, summary judgment was properly granted in favor of the County and Warden Guarini in his official capacity."); <u>Cuvo v. De Biasi</u>, 169 F. App'x 688, 693 (3d Cir. 2006) ("We will affirm the District Court's dismissal of the claims against the officers in their official capacities because a lawsuit against public officers in their official capacities is functionally a suit against the public entity that employs them.  Because Cuvo

is suing Palmer Township, the suit against the officers in their official capacities is redundant.") (internal citations omitted); <u>Matos v. Laielli</u>, 2016 WL 6275161, at *2 n. 1 (D.N.J. Oct. 26, 2016) ("Insofar as any claims have been asserted against Balles in his official capacity, they are dismissed as duplicative of the claims against the County.").

Here, the supervisory liability claims against Chief Gallagher in his official capacity are entirely duplicative of the municipal liability claims against North Wildwood.  The claims are all premised upon the same conclusory allegations and underlying facts.  Accordingly, the Court grants Chief Gallagher's motion to dismiss Counts 2 and 5, the supervisory liability claims against Chief Gallagher in his official capacity, as duplicative of Counts 3 and 6, the municipal liability claims against North Wildwood.  Any amendment to the Complaint as to these claims would be futile.  Therefore, Plaintiff's supervisory liability claims against Chief Gallagher in his official capacity under Section 1983 and the NJCRA, set forth in Counts 2 and 5, are dismissed with prejudice.

## IV.  CONCLUSION

For the foregoing reasons, the Motion to Dismiss by Defendant Sergeant McGee is denied without prejudice and the Motion to Dismiss by Defendants North Wildwood and Chief Gallagher is granted.  Plaintiff may amend his pleadings within

thirty (30) days of the entry of this Opinion and the

accompanying Order to cure the deficiencies identified herein.

An appropriate Order shall issue on this date.

s/Renée Marie Bumb<br>
RENÉE MARIE BUMB<br>
UNITED STATES DISTRICT JUDGE

Dated: <u>May 5, 2017</u>